```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
RUSSUL CORPORATION,                 :     06 Civ. 0037 (JCF)
                                    :
            Plaintiff,              :       OPINION
                                    :     AND   ORDER
     - against -                    :
                                    :
ZIM AMERICAN INTEGRATED SHIPPING    :
SERVICES CO., INC. and DOES 1-25,   :
                                    :
            Defendants.             :
- - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Russul Corporation ("Russul") has sued Zim American Integrated Shipping Services Company, Inc. ("Zim"), a vessel-operating common carrier, for damages as a result of Zim's premature shipment of used cars on behalf of Russul.  Zim initiated the shipment prior to receiving required customs documents, leading to seizure of the cars by U.S. Customs and Border Protection.  The parties consented to proceed before me for all purposes pursuant to 28 U.S.C. § 636(c), and a bench trial was held on June 22, 2009.  In its post-trial submission, the defendant argues, among other things, that the plaintiff's action is time-barred under the relevant statute of limitations.  For the reasons that follow, this case is dismissed as untimely.

Background

Zim became the shipper for the plaintiff through Russul's

1

agent, Eurocargo Express ("Eurocargo").[1]  Eurocargo did business with Zim on a regular basis; they had worked together on more than 40 shipments (Tr. at 84-85)[2] and had an ongoing service contract. (Tr. 85; Def. Exh. 14).[3]

In December 2003, Russul hired Eurocargo to arrange the shipment of four used cars from Long Beach, California to Novorossiysk, Russia, on the way to their ultimate destination in Kazakhstan.  <u>Russul Corp. v. Zim American Integrated Shipping Services Co.</u>, No. CV 05-04211, at 2 (C.D. Cal. Dec. 22, 2005) (unpublished decision) ("Transfer Order").[4]  Eurocargo then contacted Zim to book space on one of its vessels. (Transfer Order at 2; Pl. Exh. A).  On December 15, 2003, Eurocargo delivered the cars in a single container and Zim took "custody and control of it."  (Transfer Order at 2; Tr. at 100).

There was an understanding between Eurocargo and Zim that the

---

[1] Eurocargo is a licensed Non Vessel Operator Common Carrier ("NVOCC"), a common carrier that "does not operate the vessels by which the ocean transportation is provided" and "is a shipper in its relationship with an ocean common carrier."  <u>Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.</u>, 547 F.3d 351, 357 (2d Cir. 2008) (quoting 46 U.S.C. § 40102(16)).

[2] "Tr." refers to the trial transcript.

[3] Unless otherwise indicated, "Exh." refers to exhibits admitted at trial.

[4] Any citation to facts recited in the Transfer Order or in my summary judgment decision in this case is merely for the purposes of background and does not serve as a basis for any substantive determination.

cargo was not to be loaded onto the shipping vessel until Zim had received the necessary U.S. Customs and Border Protection ("Customs") export documentation from Eurocargo. (Pl. Exh. A; Tr. at 23-24, 94). Eurocargo, acting on behalf of Russul, agreed to pay Zim a fee to "roll [the cargo] over to the next vessel," because the export documentation was not ready in time for the originally reserved shipping date. (Tr. at 26; Pl. Exh. B).

Despite this arrangement, on December 23, 2003, Russul's cars were loaded onto one of Zim's vessels before the titles for the cars had been "validated and approved by [] Customs." (Tr. at 101; Def. Exh. 11). On January 6, 2004, Eurocargo contacted Zim for additional information needed in connection with obtaining clearance from Customs, which was then still pending. Russul Corp. v. Zim American Integrated Shipping Services Co., No. 06 Civ. 0037, 2009 WL 466149, at *2 (S.D.N.Y. Feb. 23, 2009). At some point that day, Eurocargo first learned that the cars had already been shipped. Id. When Customs was contacted soon thereafter, it ordered that the cars be returned to the United States. Id. Zim rerouted the cars to Long Beach, California, where on February 12, 2004, they were seized by Customs and ultimately sold at auction. Id. Russul was officially notified of the seizure by Customs through a letter, stamped April 5, 2004, addressed to Yuri Mazourenko of West Hills Motor Cars ("West Hills"), the original owner of the used cars and the client of Russul and Eurocargo in

3

this transaction.  (Pl. Exh. D; Tr. at 58-59, 112-13; Def. Exh. 8).

On December 23, 2003, Zim had prepared an ocean bill of lading to memorialize its arrangement with Eurocargo (the "Bill of Lading").  Russul, 2009 WL 466149, at *1.  The parties agree that neither Russul nor Eurocargo ever received the Bill of Lading from Zim for review and approval for this particular shipment.  (Tr. at 29, 96).  It is also undisputed that Eurocargo was, at the time, fully familiar with Zim's standard bill of lading.  Russul, 2009 WL 466149, at *2.  Russul "does not dispute that the unissued [Bill of Lading] . . . was the standard [bill of lading] Zim issued in the ordinary course of business."  (Transfer Order at 6).  Neither does Russul assert that, had it been offered the opportunity to review the Bill of Lading, it would have refused to accept the standard terms and conditions.  (Transfer Order at 6; Tr. at 70-73).  The standard bill of lading incorporates the U.S. Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1300 et seq.,[5] as setting the terms of Zim's liability during the period of time that the goods are under Zim's custody or control.  (Def. Exh. 15).

Russul filed suit in California state court on May 4, 2005, alleging that Zim's failure to adhere to Eurocargo's instructions to hold the cargo until it had been cleared for shipment

---

[5] The current version of COGSA can be found as a note to 46 U.S.C. § 30701.  This opinion cites the pre-2006 section numbers of COGSA as they appeared in the appendix to Title 46 of the United States Code.

4

constituted a breach of its common law and statutory duties as a common carrier. (Compl., ¶¶ 13, 17, 20). Russul sought damages of not less than $80,000.[6] (Compl., ¶ 24). Zim removed the action to the United States District Court for the Central District of California in June 2005. Shortly thereafter, Zim moved to dismiss the action on grounds of untimeliness and improper venue.

On December 22, 2005, United States District Judge Nora M. Manella found the forum selection clause in the Bill of Lading applicable and transferred the case to this district. (Transfer Order at 7-8). Judge Manella noted that "[b]ecause this court finds [] that any action should have been brought in the Southern District of New York, it need not -- and does not -- reach the statute of limitations issue." (Transfer Order at 4).

Discussion

    A.   Applicability of COGSA

Before determining whether this case was filed within the applicable statute of limitations, I must first determine whether

---

[6] Russul ultimately concluded that its damages totaled $225,850. (Plaintiff Russul's Post Trial Brief ("Pl. Post Trial Brief") at 25). This amount includes indemnification for a $75,850 payment it made to its client in Kazakhstan to reimburse him for the purchase of the cars and for "criminal penalties assessed for violation of currency regulations," as the merchandise had been pre-paid without being delivered, in violation of the law of Kazakhstan. (Pl. Post Trial Brief at 7, 24-25; Tr. at 115-17; Pl. Exhs. G, H, I, K). In addition, Russul sought $150,000 in consequential damages for a year of lost commissions, claiming its client in Kazakhstan cancelled his contract with Russul as a result of the failure of this shipment of cars. (Pl. Post Trial Brief at 25).

COGSA -- and, accordingly, its statute of limitations -- applies. Under either of two theories, it does.  First, COGSA, by its own terms, governs the contract at issue.  Furthermore, the District Court in California already found that the Bill of Lading, which incorporates COGSA, controls, and under the "law of the case" doctrine that determination must be followed here.

### 1. The Plain Meaning of COGSA

COGSA states that it "shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C. § 1312.  Therefore, even if the Bill of Lading did not explicitly incorporate COGSA or were otherwise inapplicable, COGSA would still govern this lawsuit.  Hangzhou Leather Products Industrial v. Air City, Inc., No. 96 Civ. 1590, 1997 WL 722700, at *1 (E.D.N.Y. 1997); B.F. McKernin & Co. v. United States Lines, Inc., 416 F. Supp. 1068, 1070-71 (S.D.N.Y. 1976).

### 2. The Bill of Lading's Incorporation of COGSA

In addition, the Bill of Lading adopted COGSA as the law governing the agreement between Russul and Zim, and, under the law of the case, the Bill of Lading controls this transaction.  The law of the case doctrine holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983).

The law of the case doctrine is "'at best, a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided.'"  United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000)(quoting United States v. Martinez, 987 F.2d 920, 923 (2d Cir. 1993)); accord Arizona, 460 U.S. at 618 ("Law of the case directs a court's discretion, it does not limit the tribunal's power.").  However, while a court is empowered to revisit decisions of another court in the same matter, it "should be loathe to do so in the absence of extraordinary circumstances." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1988).  Thus, there are several exceptions to the law of the case doctrine, none of which are applicable here.

"Extraordinary circumstances" justifying departure from the law of the case include situations where the prior court's ruling was "'clearly erroneous'" or its application would "'work a manifest injustice.'" Id. (quoting Arizona, 460 U.S. at 618 n.8). Here, Judge Manella's decision in the District Court in California was far from "clearly erroneous."  Where a shipper has "common business experience" with carriers such that it should know a carrier will issue a custom bill of lading, the bill of lading applies to the transaction. Luckenbach S.S. Co. v. American Mills Co., 24 F.2d 704, 705 (5th Cir. 1928); Berkshire Knitting Mills v. Moore-McCormack Lines, Inc., 265 F. Supp. 846, 848 (S.D.N.Y. 1965)

("The form of bill of lading was concededly known, and as a matter of common business experience in transactions of this nature both parties must be deemed bound by the terms it contained."). "It is well-settled that as long as a bill of lading would have been issued in the ordinary course of business, the bill of lading serves as the contract governing the relationship of a shipper and carrier even if it was not actually issued." Ironfarmers Parts & Equipment v. Companie Generale Maritime et Financiere, No. CV493-321, 1994 WL 730895, at *2 (S.D. Ga. June 3, 1994).  In fact, the Bill of Lading's applicability is particularly clear here given the numerous prior shipments that had occurred between Zim and Eurocargo with fully issued bills of lading, all of which "were identical to the one Zim was prepared to issue in the instant case." (Transfer Order at 6).  See Royal Insurance Co. v. Sea-Land Services, Inc., 50 F.3d 723, 727 (9th Cir. 1995) (enforcement of bill of lading issued after loading of goods is "especially appropriate when . . . there has been a course of dealing between the parties using identical bills of lading").

A court may also deviate from law of the case where there has been a change in the governing law. Agostini v. Felton, 521 U.S. 203, 236 (1997) (law of the case doctrine is inapplicable when there has been a change in the law); 18 Moore's Federal Practice § 134.21[3] (3d ed. 2009).  There has been no such change here.

Finally, the law of the case doctrine does not apply to dicta,

8

but only a prior court's rulings of law.  See Arizona, 460 U.S. at 618; Great Lakes Dredge & Dock Co. v. Miller, 957 F.2d 1575, 1578 (11th Cir. 1993) (dicta is not law of the case); Krippendorf v. Hyde, 110 U.S. 276, 281-82 (1884); Coca-Cola Bottling Co. v. Coca Cola Co., 988 F.2d 414, 430 (3d Cir. 1993).  Here, Judge Manella's determination that the Bill of Lading governs was a central holding of her decision.

By finding the forum selection clause in the Bill of Lading enforceable and then transferring this case to this district, Judge Manella determined that the Bill of Lading controls this transaction.  (Transfer Order at 4-8).  Therefore, under the law of the case doctrine, the Bill of Lading -- which incorporates COGSA -- is applicable here as well.

### B.  Statute of Limitations

COGSA's statute of limitations provides that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered," as long as the shipper is given notice of the loss or damage.  46 U.S.C. § 1303(6).  Although the goods at issue never arrived at their arranged destination because Zim's vessel reversed course at the instruction of Customs, the relevant inquiry here must focus on the date of "delivery," as interpreted by courts in this district, and not the date that the goods "should have been delivered."

Delivery is marked by the date the goods "should have been delivered" only in situations where the goods are "lost altogether," as when a ship sinks or a vessel is destroyed and thus future delivery is prevented. Old Toledo Brands, Inc. v. Schenker, Inc., 590 F. Supp. 2d 588, 591 (S.D.N.Y. 2008) (quoting Mitsui Marine Fire & Insurance, Ltd. v. Direct Container Line, Inc., No. 99 Civ. 9461, 2000 WL 262921, at *2 (S.D.N.Y. March 6, 2000)). Moreover, it is impossible to determine the date when the goods "should have been delivered" here since such a date was never set by the parties. See Mitsui Marine, 2000 WL 262921, at *1 (court cannot use the date the goods "should have been delivered" as the date on which the statute of limitations began to run because "it is impossible to tell from the pleadings when the goods should have been delivered"). Therefore, a determination of whether the statute of limitations had expired before Russul brought this action turns on when "delivery" under COGSA occurred and whether Russul had notice of the loss of the goods.

Although "there is no statutory definition, no legislative history, little case law, and no Supreme Court or Second Circuit authority directly" defining "delivery" for this purpose, Atlantic Mutual Insurance Cos. v. M/V "BALSA 38", 695 F. Supp. 165, 167 (S.D.N.Y. 1988), a consistent definition has developed in this district. See Universal Ruma Co. v. Mediterranean Shipping Co. S.A., No. 99 Civ. 10880, 2000 WL 991393, at *3 (S.D.N.Y. July 19,

2000). "[E]ffective delivery requires not only the discharge of the goods from the vessel, but also notice of the discharge and a reasonable opportunity for the inspection or removal of the goods." Id. at *3 (citing Hangzhou, 1997 WL 722700, at *2; Madu v. Kerr Steamship Co., No. 94 Civ. 8004, 1995 WL 322121, at *2 (S.D.N.Y. May 30, 1995); Orient Atlantic Parco, Inc. v. Maersk Lines, 740 F. Supp. 1002, 1005 (S.D.N.Y. 1990); Lithotip, CA. v. S.S. Guarico, 592 F. Supp. 1280, 1281 (S.D.N.Y. 1984); Thomas J. Schoenbaum, Admiralty and Maritime Law §§ 10-17, 10-41 (2d ed. 1994)).

This definition does not require an actual inspection or retrieval of the goods. Atlantic Mutual, 695 F. Supp. at 168 (quoting Lithotip, 592 F. Supp. at 1281). Rather, the determination of when delivery occurred is necessarily a fact-driven inquiry. See Atlantic Mutual, 695 F. Supp. at 170 (noting that "practical circumstances play a part in determining when 'delivery' of cargo occurs" and "since 'delivery' does not exist in a vacuum, . . . the circumstances of each case dictate the result"). "It is at heart a question of common sense." Id.

Under this definition of "delivery," the statute of limitation began to run no later than April 5, 2004, when Customs officially notified Russul -- through a letter to its client West Hills -- that its cargo had been seized. (Pl. Exh. D). This communication gave the plaintiff instructions on how to obtain relief from the forfeiture. (Pl. Exh. D). The letter provided the requisite

11

notice and opportunity to inspect under COGSA: it informed the plaintiff that it had been injured (i.e., its cargo had been seized), which is at the core of the "notice and opportunity to inspect" requirement.  Therefore, the statute of limitations expired, at the latest, on April 5, 2004.  In fact, it may have expired earlier given Russul's close communication with Zim concerning the return of the cargo.  There is evidence that the plaintiff was put on notice in early January 2004 -- both by Zim and by Customs -- that its cargo was being ordered to be returned to port.  (Pl. Exh. C; Tr. at 34-36).  Under any of these scenarios, Russul's filing of a lawsuit on May 4, 2005 was untimely.

    C.    Waiver

Finally, Zim's statute of limitations defense has been properly preserved. Because "the risk of substantial prejudice to the plaintiff increases in proportion to the length of the defendant's delay," a defendant must raise any statute of limitations issues as early as possible in the litigation.  27 Federal Procedure, Lawyers' Edition § 62:93 (2009) (citing Strauss v. Douglas Aircraft Co., 404 F.2d 1152, 1155 (2d Cir. 1968)); South Lyme Property Owners Association, Inc. v. Town of Old Lyme, 539 F. Supp. 2d 547, 554-55 (D. Conn. 2008)); Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987).

Here, Zim raised the defense in its Answer, in its Motion to Dismiss before the District Court in California, in the Joint Pretrial Order, and in its post-trial brief. Therefore, the plaintiff was clearly on notice of this defense, and although Zim failed to present this issue in its Motion for Summary Judgment, that oversight was legally inconsequential.

Conclusion

For the reasons discussed above, this case is dismissed as untimely.  The Clerk of Court shall enter judgment accordingly.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       October 1, 2009

Copies mailed this date:

Richard C. Yeskoo, Esq.
Thomas T. Tamlyn, Esq.
Yeskoo Hogan & Tamlyn, LLP
535 Fifth Avenue
New York, New York 10017

David B. Boros, Esq.
Law Offices of David Boros
5404 Alton Parkway, Ste. 5A-222
Irvine, California 92604

Vincent M. DeOrchis, Esq.
John A. Orzel, Esq.
DeOrchis & Partners, LLP
61 Broadway, 26th Floor
New York, New York 10006

Bradley M. Rose, Esq.
Kaye, Rose, Tamulski & Maltzman
1801 Century Park East
Los Angeles, California 90067